IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


MARTIN CAIN                             *
                    Plaintiff,
        v.                              *   CIVIL ACTION NO. DKC-05-3072

LT. HITCH                               *
VICTORIA BURKHARD
KATHLEEN GREEN                          *
                    Defendants.
                                       ***

## MEMORANDUM

### I. *Background*

The Prison Rape Elimination Act of 2003 ("PREA") was enacted into law on September 4, 2003, and is codified at 42 U.S.C. § 15602, *et seq*.  The PREA acknowledged the problem of prison rape and was enacted to study the problem and to provide information, resources, funding, and expertise to address it so as to protect individuals from such violence.  *See Kane v. Winn*, 319 F.Supp.2d 162, 189 (D. Mass. 2004).

Plaintiff Martin Cain is a Maryland inmate housed currently housed at the Eastern Pre-Release Unit in Church Hill, Maryland.  On November 14, 2006, he filed this 42 U.S.C. § 1983 action alleging that  while confined at the Eastern Correctional Institution-Annex ("ECI-A") in Westover, Maryland, ECI-A inmate James McCray ("McCray") sexually threatened him.  Paper No. 1.  Plaintiff claims that the incident was reported to Defendant Hitch, but Hitch failed to comply with unspecified requirements under the PREA.  Plaintiff further complains that on April 16, 2005, McCray tried to start a fight, which was reported to two ECI-A officers.  *Id*.  He states that McCray was moved to another housing unit three days later, blamed Plaintiff for the move, and used sexually threatening language[1] against Plaintiff while both inmates were passing through the ECI-A

---

[1]        According to Plaintiff, McCray said he "was going to f-ck me in my ass." Paper No. 1 at Attachment.

compound area.  *Id*. at Attachment.  Plaintiff asserts that while Lt. Hitch spoke to McCray about the threats, he took no further action and dissuaded Plaintiff from filing charges of sexual assault and sexual threats against McCray.[2]  Paper No. 1 at Attachment.  Finally, Plaintiff claims that on April 20, 2005, he informed an officer that there may be trouble with McCray in the ECI-A yard. *Id*.  Plaintiff states that he was taken to Hitch's office 90 minutes later and offered protective custody status, which he declined.  *Id*.  Plaintiff complains that when he informed Hitch that he had been threatened by McCray verbally with sexually explicit language he, not McCray, was placed on segregation for a classification review.  *Id*.  The Complaint asks that: (1) Defendants be held liable for their non-compliance with the PREA; (2) McCray be prosecuted by ECI-A; and (3) Plaintiff be compensated.

Pursuant to this court's scheduling order, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Plaintiff filed his Response thereto.  Paper Nos. 16 & 18.  A hearing is not needed to resolve the constitutional issues presented in the matter.  *See* Local Rule 105.6. (D. Md. 2004).  For reasons which follow, the court shall grant Defendants' Motion.

II.  *Standard of Review*

Motion to Dismiss

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *See Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).  Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The court, however, need not accept unsupported legal

---

[2]    Plaintiff alleges that Hitch informed him that the filing of charges would adversely affect his parole determination and result in his placement on segregation.  Paper No. 1 at Attachment.

2

conclusions or pleaded facts, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to particular acts or practices. *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Motion for Summary Judgment

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex*, 477 U.S. at 322-323. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

III. *Analysis*

Defendants state that on April 20, 2005, Plaintiff was placed on administrative segregation for consideration of assignment on protective custody with a 120-hour classification review in response to his claims that: (1) he had been having problems with another inmate for a period of time; (2) the other inmate had made some threatening remarks; and (3) something may happen between himself and the other inmate. Paper No. 16, Ex. 1. Defendants state that Plaintiff indicated that he was not in fear of his life and did not want protective custody. *Id.*

On April 28, 2005, Lt. Hitch requested that Plaintiff not be returned to ECI-A due to anonymous information received during the investigation.[3]  Paper No. 16, Ex. 1.  He asked that the two inmates be kept apart while at ECI-A.  Plaintiff was transferred off segregation to ECI Housing on May 5, 2005, where he remained on minimum security status.  *Id*.  He was later transferred to the Metropolitan Transitional Center on August 9, 2005.[4]

Plaintiff states that the sole question here is why Lt. Hitch and ECI officials failed to comply with the PREA which, in this case, would require them to administratively and criminally charge McCray in response to his allegations that he was threatened.    Paper No. 18.  Defendants do not respond to this issue, but counter by arguing that Plaintiff has failed to exhaust his claim administratively and/or failed to demonstrate a violation of his rights under the Eighth Amendment.

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).   Plaintiff's prisoner complaint falls under the exhaustion prerequisites of § 1997e(a), and his claims must be dismissed unless he can show that

---

[3]    In his note to ECI personnel, Lt. Hitch indicated that he had received information that Plaintiff had penned an anonymous note stating that McCray was planning an escape and that Plaintiff was going to have someone on the outside physically harm McCray.  Paper No. 16, Ex. 1.  In his Response, Plaintiff denies "dropping a note" on McCray.  Paper No. 18.

[4]    It is Defendants' position that Plaintiff did not specifically indicate that he had been sexually threatened by James McCray, only that he and McCray were having problems, that he had been verbally threatened with bodily harm by McCray, and that something could happen if they were not separated.  Paper No. 16.

he has satisfied the administrative exhaustion requirement or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd,* 98 Fed. Appx. 253 (4th Cir. June 2, 2004) (per curiam). Under *Chase* a Maryland inmate may satisfy exhaustion by seeking review of an Administrative Remedy Procedure ("ARP") complaint denial from the Warden to the Commissioner and then appealing the Commissioner's decision to the Inmate Grievance Office ("IGO"), the *final level* of appeal within Maryland's administrative grievance system for prisoners. *Id*. at 529. (emphasis added)

In addition, the Supreme Court has recently expounded on the exhaustion issue, finding that prisoners must complete the administrative review process, using all steps that the agency holds out and doing so properly. It concluded that proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 126 S.Ct. 2378, 2385-86 (2006). Exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. *See Anderson v. XYZ Correctional Health Services, Inc*., 407 F.2d 674, 682 (4th Cir. 2005).

In his Complaint, Plaintiff acknowledges that he did not pursue the administrative remedy process, he does not refute Defendants' claim that he has failed to exhaust his administrative remedies fully as to the claims raised herein. Therefore, his claims are subject to dismissal for the failure to exhaust administrative remedies.

The Court's analysis does not end at this juncture. To the extent that Plaintiff is alleging that the Defendants violated the PREA, the court finds he has no standing to bring such a claim,

either as a direct action under the PREA or under 42 U.S.C. § 1983.   Under statute, the primary

purpose of the PREA was to: (1) establish standards for detection, prevention, reduction, and

punishment of prison rape; (2) increase the available data and information on the incidence of prison

rape and the accountability of prison officials who fail to detect, prevent, reduce, and punish prison

rape; and (3) protect inmates' Eighth Amendment rights.   *See* 42 U.S.C. § 15602, *et seq*.  PREA was

enacted to study the problem of prison rape and to provide the funding and expertise, *e.g.* review

panels and commissions, to address the problem.   There is nothing in the PREA which suggests that

it was intended to create a private cause of action, independent from any complaint alleging

violation(s) of the Constitution of the United States.[5]   *See Pirtle v. Hickman*, 2005 WL 3359731,

*1 (D. Idaho 2005).   Moreover, § 1983 serves as a mechanism to protect federal rights, not just

violations of federal law.   As recently stated by the Supreme Court:

> A court's role in discerning whether personal rights exist in the §
> 1983 context should therefore not differ from its role in discerning
> whether personal rights exist in the implied right of action context. .
> . . .Accordingly, where the text and structure of a statute provide no
> indication that Congress intends to create new individual rights, there
> is no basis for a private suit, whether under § 1983 or under an
> implied right of action.

*Gonzaga University v. Doe*,  536 U.S. 273, 285-86, 122 S.Ct. 2268, 2276-77 (2002).

Further, insofar as Plaintiff is raising a failure-to-protect claim under the Eighth Amendment,

the court finds that he has failed to adduce evidence establishing deliberate indifference on the part

of Defendants.[6]   Based upon the Complaint allegations and record exhibits, the evidence shows

---

[5]      The court notes that as a private citizen Plaintiff lacks a judicially cognizable interest in the prosecution or non-prosecution of inmate McCray. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Otero v. United States Attorney General*, 832 F.2d 141 (11th Cir. 1987).

[6]      To meet the standard for establishing a failure-to-protect claim under the Eighth Amendment, a prisoner must project evidence that a prison official "knows of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S.

that: Plaintiff complained about verbal threats of harm from McCray; ECI-A staff immediately took action to place him in a protective housing assignment while an investigation could be conducted, even though Plaintiff indicated that he was not in fear of McCray and did not want to be assigned to protective custody; and ECI-A personnel separated Plaintiff from McCray, first by housing unit and then by prison facility.   Staff did not disregard his claims of verbal threats of bodily harm and no constitutional violation has been proved.[7]

### III. *Conclusion*

For the aforementioned reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment shall be granted.   Judgment shall be entered in favor of Defendants and against Plaintiff.  A separate Order shall follow this opinion.


Date:____8/29/06_____             _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge

---

825, 837 (1994); *see also Rich v. Bruce,* 129 F.3d 336, 339-40 (4th Cir. 1997).

[7]      To establish a claim under § 1983 for failure to protect from violence, an inmate must show "serious or significant physical or emotional injury," *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Although he seeks compensatory damages, at no point in time does Plaintiff allege that he suffered a physical injury. The court further observes that the PLRA states that "no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  It is settled law that a prior physical injury is required for a prisoner to recover damages for emotional and mental injury. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997).